## IVES *v.* CRESS.

A vendor retaining the legal title, cannot maintain an action on the case for injuries to the freehold or inheritance, during the possession of his vendee under the articles; even though it does not appear that the vendee had ever entitled himself to a conveyance.

Nor can he recover from the wrongdoer damages arising from a rescission of the contract on account of such injuries.

IN error from the Common Pleas of Montgomery county.

*March* 26. The only question in this cause was the right to maintain the action. It was an action on the case, in which the plaintiff in his amended *narr.* set out a joint right in himself, being the owner of a mill, and in defendant, the owner of another mill higher up the stream, to the use of the water of the Manatawny creek, for their respective mills, and that being seised, &c., he entered into articles for the sale of his mill, &c., to T. & J. Varney, and that *at the time of the commission of the grievances*, in the year 1844, the said mill, &c., was in the possession and occupation of the said Varneys or their tenants. That defendant unlawfully used the water of the creek for his mill, in such a manner as *altogether* to deprive the lower mill of the use of the water; in consequence of which, the Varneys were compelled to abandon their contract, whereby the plaintiff was aggrieved in the loss of the sale to the Varneys, and in his inheritance and estate in the lower mill.

On the trial, having shown title to the mill and stream, as laid in the *narr.*, the plaintiff gave in evidence the articles between him-

self and the Varneys, dated July 12, 1843, whereby he sold to them the lower mill, with other property, for $14,000, payable $500 in three months after possession taken; $500 in October 1, 1844; $1000 in October 1, 1845, and so on in yearly instalments: after the payment of the *third* instalment, the Varneys were to give a bond and mortgage on the land for the residue. Ives further agreed, that on the payment of the first-mentioned sum of $500, he would convey to the Varneys, they giving a bond and mortgage to him (for the unpaid purchase-money.)

The Varneys entered and remained in possession until this contract was rescinded, and so far as appears, there was no other payment on account of the purchase-money than the sum of $5, at the execution of the articles.

The court (KRAUSE, P. J.) rejected all evidence of the acts of the defendant after possession taken by the Varneys under the contract, and up to the time that plaintiff regained possession on its rescission. They also refused to hear evidence showing the abandonment of the contract by the Varneys, by reason of the acts of defendant, in cutting off the water from the mill.

The court instructed the jury to find for defendant, saying that the Varneys were the equitable owners, and entitled to recover for all injuries to the freehold, &c., during the continuance of their title and possession, and there was no evidence of any injury before or after the existence of that estate.

*Mulvany,* for plaintiff in error.—The only question is, whether a legal cause of action appears in the declaration, for that is an exact statement of the ground of complaint. As a general rule, the action must be brought in the name of the holder of the legal title; 3 Chit. Gen. Prac. 126; Crabb on Real Property, §§ 1864, 2241, Law Lib.; Wake *v.* Tinkler, 16 East 36; and in Pennsylvania a wrongdoer can never set up the outstanding equitable title as a defence. [Ch. J.—Suppose the Varneys had paid, could you have sued?] We showed an additional right in the damage by the loss of the sale. [*Per Curiam.*—The injury was an inability to pay, certainly you cannot sue on that account.] In Baker *v.* Sanderson, 3 Pick. 348, the threats of tenants to leave, and abatement of rent made by reason of the stoppage of water from a mill, was held to sustain the action. But it is settled, that the owner may sue for such injuries without actual damage; Ripka *v.* Sergeant, 7 Watts & Serg. 9; Seneca *v.* Auburn, 5 Hill, 170; Ashby *v.* White, Holt, 524; 14 How. St. Tr. 695, and a purchaser is a tenant at will until

conditions are performed; Kenrick v. Smick, 7 Watts & Serg. 46. The tenant here being at will, the owner may maintain trespass; Sumner v. Tileston, 7 Pick. 198.

Whether the injury was to the inheritance was for the jury; Queen's College v. Hallet, 14 East, 489.

*Boyer* and *Mallery*, contrà.—No instance of such an action is to be found in the books; if sustained, there are two distinct rights of action given for one injury; nor is this an injury averred to be permanent, affecting the reversion. [*Per Curiam.*—You need not cite those cases: he is not a reversioner.] The Varneys were more than equitable owners, for the time had passed for the payment on which they were entitled to a conveyance; Sug. on Vend. 277–8; 2 Pow. on Cont. 61; Paine v. Meller, 6 Ves. 349. The rule is well settled in this state, that if the vendee is entitled to a deed, he is considered as having it; Wykoff v. Wykoff, 3 Watts & Serg. 481; Gregg v. Patterson, 9 Id. 197; 10 Serg. & Rawle, 39; Riddlesberger v. Mentzer, 7 Watts, 141. Here, there being no evidence, there is a presumption that the contract had been complied with.

*Meredith*, in reply.—The cases in Pennsylvania are of two classes on this point: where the vendee has performed all conditions of the sale, an action by either party will be sustained; and where the conditions have not been complied with, the holder of the legal title, as between himself and strangers, is the only one known by the law. The cases of naked trustees are another class. A recovery in this case would be a bar to any other action for the same cause. That the vendee and vendor, &c., have each distinct estates, is settled, Richter v. Selin, 8 Serg. & Rawle, 425, and as the law does not split the injury to the *inheritance* into several causes of action, as it does that to the *possession* and *inheritance*, it must be that an action will lie by him, who, being the holder of the legal fee-simple, has also a beneficial estate in the land, recognised by the law.

Whether the injury was to the possession only, does not arise in this case, for the judge took the point from the jury on another ground.

*April* 3. BELL, J.—All the errors assigned in this record may be comprehended in the single question whether, under the facts disclosed on the trial, the plaintiff can maintain this action. By his amended declaration, he avers an injury inflicted upon his estate

and interest in the mills, water-power, and tract of land, while the same was in the possession of Theodore and Jesse Varney and Peter Longabaugh. It turns out that the wrong complained of was done in the years 1844 and 1845, while the Messrs. Varney and their tenant, Longabaugh, were in possession of the premises, under and by virtue of the agreement of July 12, 1843, having paid part of the purchase-money. They had thus acquired an equitable estate as vendees, for a valuable consideration, and, up to the rescission of the contract in October, 1846, are to be regarded as the true owners thereof, for every purpose for which an estate can be held. It was vendable as theirs, chargeable as theirs, capable of being encumbered as theirs, might have been devised, would have descended and been assets as theirs. So far are such vendees considered, in equity, as actually seised, that they must bear any loss that may happen to the estate between the agreement and the conveyance; and they will be entitled to any benefit which may accrue to it in the interval; Paine *v.* Meller, 6 Ves. jun. 349; Richter *v.* Selin, 8 Serg. & Rawle, 440. By the vendor's covenant to convey, the land is equitably severed from his ownership. Riddlesberger *v.* Mentzer, 7 Watts, 143. And so far is this principle carried, that if he put the vendee into possession, and afterwards re-enter, without his consent, the latter may maintain ejectment for the recovery of the possession, and also compel the vendor to account for the rents and profits during his wrongful possession,—and this, though the purchase-money remain unpaid; Wykoff *v.* Wykoff, 3 Watts & Serg. 481; Gregg *v.* Patterson, 9 Watts & Serg. 197. No question has or can be made, but that a right to sue for the injuries committed by the defendant, during the ownership of the vendees, resides in them,—and this, in respect of the then estate in the premises. But the plaintiff, Ives, complains of these same injuries, committed against *his* estate in the same land. This is the *gravamen* of his action. It is true, he also alleges the eventual loss of an advantageous sale, by reason of the wrongs committed by the defendant; but this must be regarded merely as the averment of a special injury, incident to and dependent on the principal wrong, namely, the invasion of his freehold. The form of action here adopted is evidently borrowed from, and fashioned upon, the remedy the law gives a reversioner against a wrongdoer for an injury inflicted upon his reversionary estate, in which the plaintiff may aver special damage, as was done in Baker *v.* Sanderson, 3 Pick. 348, and Ripka *v.* Sergeant, 7 Watts & Serg. 9. But the remedy springs from his estate in the land being an ascer-

tained and distinct interest from that enjoyed by the particular tenant, requiring nothing to perfect it. It is to vindicate this estate, and to protect this interest from invasion, that the law permits him to sue, though the actual possession be in another. But a vendor, by articles of agreement in part executed, as is the case here, has not such a several and distinct estate in the land sold as will vest him with a right of action against a mere stranger, for an injury done to it, during the continuance of the equitable estate of the vendee. It is true that, until conveyance made, the legal title remains in him, and he has also a beneficial interest in the land to the amount of the unpaid purchase-money. But this has been called the ghost of his former ownership, and, although the term be a strong one, it is aptly expressive of the hold which, in Pennsylvania, he retains upon the estate. While the contract remains unrescinded, and the vendee continues in possession of the purchased premises, the residence of the legal title in the vendor is regarded rather in the light of a security for the unpaid purchase-money than as an interest attended by the qualities and incidents of an estate properly considered.; Wilson v. Stoxe, 10 Watts, 436; Wykoff v. Wykoff, suprà. Under such circumstances, "equity considers the vendee as the purchaser of the estate sold, and the purchaser as a trustee for the vendor, for the purchase-money." Richter v. Selin, suprà. For some purposes the legal title is, formally, treated as an estate, but the purposes for which it is thus used, show that, in substance, it is nothing more than a security. Thus the vendor may bring ejectment on a failure of the vendee to comply with his covenants by payment of the price of the land, but as this is only a means of compelling payment, it may be arrested by a discharge of the debt. So, too, the legal title and the beneficial interest dependent upon it, may be taken in execution and sold as the property of the vendor, but then the sheriff's alienee takes nothing further than the vendor's right to the purchase-money, and his means of enforcing its payment; Fasholt v. Reed, 16 Serg. & Rawle, 266. These are the relative rights of the parties, so long as they mutually elect to treat the contract of sale as valid and subsisting. The moment it is rightfully disaffirmed, a different state of things is produced, but until this is done, the vendee is to be regarded as seised of the estate in the land, for every purpose of enjoyment and of action in exclusion of the vendor. There was then, in our opinion, no such estate in Ives, at the time of the committal of the grievances complained of, as gave him a right to maintain an action to recover damages for an injury to the freehold. To permit

it, might be productive not only of confusion of remedy, but great injustice. As already said, the Messrs. Varney may sue for the same injuries to the estate complained of in the declaration in the case. Nay, it is said, such a suit is now pending. If the plaintiff may also recover damages, the defendant will be subjected to a double retribution, for certainly, a judgment recovered against him in this action could not be used to shield him in the action instituted by the vendees. It is urged that the present plaintiff may be regarded as trustee of the vendees, in respect of the estate, and in that character admitted to maintain the action. But during the existence of the contract of sale, he was only a trustee of the legal title, and compellable, as such, to convey it so soon as the purchasers complied with their covenants, and cannot be recognised as the representative of their rights springing from their equitable ownership. Besides, the action is brought by the plaintiff in his own right to redress a supposed injury done to his estate, with which the vendees have no connection.

Whether the plaintiff might recover damages in a special action on the case, setting out the sale to the Varneys, the injuries inflicted upon their possession by the defendant, in consequence of which, they were prevented from a successful prosecution of their business, whereby the plaintiff lost the benefit of an advantageous sale of the premises, it is not now necessary to decide, for such is not the present action. I may say, however, without impropriety, that I do not perceive how the plaintiff could hope to maintain the form of action supposed, any more than he could claim damages on an averment that the defendant was the debtor of the vendees who depended upon the payment of the debt to furnish them the means of completing the purchase, but from the defendant's failure to comply with his obligations, they were unable to perform their covenants, to the injury of the plaintiff. In both instances, the commission of a wrong would be imputable to the defendant, but would it not in each case be equally, in legal contemplation, a wrong done to the vendees alone, for which they only could maintain an action?

On the whole, we are clear this action cannot be maintained. If the plaintiff can sue at all, it must be in some other form of action than the present.

We have not considered the other question raised in the argument, whether the injuries complained of here are of such a character as would give a right of action to a reversioner or remainderman. It is rendered unnecessary by the view already taken.

Judgment affirmed.